UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN E. MARQUEZ,<br><br>          Plaintiff,<br><br>     v.<br><br>KILOLO KIJAKAZI, acting Commissioner of Social Security,<br><br>          Defendant. | No. 1:21-cv-00205-JLT-GSA<br><br>**FINDINGS AND RECOMMENDATIONS TO DIRECT ENTRY OF JUDGMENT IN FAVOR PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**<br><br>**(Doc. 19, 23)**<br><br>**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS** |

## I.     Introduction

Plaintiff Juan E. Marquez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for social security disability insurance benefits pursuant to Title II of the Social Security Act. The matter is before the undersigned for issuance of Findings and Recommendations based on the parties' briefs.[1] Docs. 19, 23. After reviewing the record the undersigned finds that substantial evidence and applicable law do not support the ALJ's decision that Plaintiff was not disabled. Accordingly, the undersigned recommends that the Court direct entry of judgment in favor of Plaintiff and against Defendant, reversing the final decision of the Commissioner of Social Security and remanding for additional proceedings.

## II.     Factual and Procedural Background[2]

On July 21, 2017 Plaintiff applied for disability insurance benefits alleging a disability onset date of October 15, 2015. AR 156. The Commissioner denied the application initially on September 12, 2017 and on reconsideration on November 21, 2017. AR 165, 182. A hearing was

---

[1] The parties did not consent to jurisdiction of the Magistrate Judge. *See* Docs 6, 8. Accordingly, the matter was reassigned to "Unassigned District Judge," and ultimately assigned to District Judge Jennifer Thurston. Doc. 9, 22
[2] The undersigned has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, which will not be exhaustively summarized. Relevant portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

1

held before an Administrative Law Judge (the "ALJ") on July 11, 2019.  AR 34–63.  On August 14, 2019 the ALJ issued an unfavorable decision.  AR 17–33.  The Appeals Council denied review on May 18, 2020.  AR 6–11.

### III. The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).    When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**IV.    The ALJ's Decision**

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of October 15, 2015. AR 22. At step two the ALJ found that Plaintiff had the following severe impairments: arthritis, bursitis, obesity, peripheral neuropathy, and asthma. AR 22. The ALJ also determined at step two that Plaintiff had the following non-severe impairments: diabetes, hypertension and normocytic anemia. AR 22–23. At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 23.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. 404.1567(c) with the following additional restrictions: frequent crouching; occasional crawling

and climbing; no exposure to extreme heat; and no exposure to dust, pollens, chemicals, or other respiratory irritants in concentrations greater than an office or retail environment. AR 24–28.

At step four the ALJ concluded that Plaintiff could not perform any past relevant work. AR 28. At step five, in reliance on the VE's testimony, the ALJ concluded that Plaintiff could perform other jobs existing in significant numbers in the national economy, namely: hand packager, kitchen helper, and store laborer. AR 28–29. Accordingly, the ALJ concluded that Plaintiff was not disabled at any time between his alleged disability onset date of October 15, 2015 through the date of the ALJ's decision on August 14, 2019. AR 29.

### V. Issues Presented

Plaintiff asserts four claims of error: 1) that the Appeals Council erred by failing to admit and consider new and material evidence submitted by Plaintiff; 2) that the ALJ failed to develop the record and obtain an assessment of Plaintiff's limitations from a treating or examining source and improperly relied upon the non-examining opinions; 3) that the ALJ erred in failing to reconcile conflicts between the vocational testimony, the Dictionary of Occupational Titles (DOT), and the ALJ's established RFC; and 4) the ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations, and failed to offer clear and convincing reasons for rejecting his testimony. Br. at 1–2, Doc. 19.

### A. Appeals Council

#### 1. Applicable Law

No later than five business days before the date of the hearing, a claimant must submit all written evidence to the administrative law judge who will conduct the hearing in the claimant's case. 20 C.F.R. § 416.1435(a). The ALJ may also accept information after the five-day deadline prior to issuing the hearing decision under circumstances enumerated in 20 C.F.R. § 416.1435(b).

In limited circumstances, a claimant may submit new and material evidence to the Appeals Council that relates to the period on or before the ALJ's decision. *Brewes v. Comm'r of*

*Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012); 20 C.F.R. § 416.1470(a)(5). Evidence is material if it bears "directly and substantially on the matter in dispute," and there is a "reasonable possibility" that the new evidence would have changed the outcome. 20 C.F.R. § 404.970; *Tudor v. Saul*, 484 F. Supp. 3d 717, 726 (N.D. Cal. 2020) (citing *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001)).

### 2. <u>Analysis</u>

The Appeals Council stated, in relevant part: "You submitted ninety-two pages from Kaiser Permanente dated May 1, 2019 to August 29, 2019. We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence." AR 7.

Initially, Plaintiff contends the Appeals Council erred with respect to the May 1, 2019 bilateral x-rays of the knees showing progression of the arthritis, including moderate narrowing, which Plaintiff contends was new and material because it establishes worsening of the impairment. Br. at 9 (citing AR 65). Although the Appeals Council did not notice, this x-ray report is duplicative of one already in the record which the ALJ cited and discussed. AR 26 ("In May 2019, x-rays of the knees showed bilateral osteoarthritis and moderate osteoarthropathy, stage three.") (citing Ex. 5F/5, AR 554). Thus, this evidence was not new.

Plaintiff also contends the Appeals Council erred with respect to a June 1, 2019 pulmonary function test. Br. at 9 (citing AR 111, 123). This evidence was indeed new and relates to a period on or before the ALJ's decision as it predated the same. But the evidence does not present a reasonable likelihood that the outcome would have been different had the evidence been considered.

In addition to noting "an interval decline in FVC and TLC" since the previous study, the pulmonary function test report also noted: 1) spirometry within normal limits; 2) lung volumes

within normal limits; 3) diffusion within normal limits; and 4) an overall impression of "Normal study. Interval decline in FVC and TLC compared to prior testing without any increase in air trapping. Clinical correlation advised" AR 111.

In a subsequent progress note Plaintiff's pulmonologist noted "Normal values but on a detailed review, there has been a decline in FVC and TLC. This could represent early interstitial lung disease. Patient has always attributed his symptoms to prior paving exposure." AR 123 (emphasis added). The pulmonologist went on to explain that asthma could not be ruled out, that MRI was not a feasible diagnostic, and that 2 prior CT scans did not show right scapula are pathology. *Id.* The pulmonologist noted he offered an additional chest x-ray, but Plaintiff declined. *Id.*

Plaintiff contends that: 1) the pulmonologist noted the decline in FVC and TLC "was concerning for interstitial lung disease progression;" 2) "the pulmonologist indicated the increased likelihood that the disorder was attributable to decades-long exposure to asphalt work"; and, 3) "Given the length of time between x-rays as well as the pulmonologist's inability to pinpoint the cause of the respiratory disorder until June, 2019, Plaintiff maintains that had the ALJ seen this evidence, there is a great likelihood he would have found greater support for Plaintiff's reported limitations in standing and walking." Br. at 9.

This argument is not entirely persuasive. The pulmonologist did not note that the decline in FVC and TLC "was concerning for interstitial lung disease progression" because he neither diagnosed interstitial lung disease nor stated that the disease had progressed. Rather he stated the decline in FVC and TLC "could represent early interstitial lung disease." *Id*.

Nor did the pulmonologist opine that it was attributable to decades long asphalt exposure. Rather, he noted that "Patient has always attributed his symptoms to prior paving exposure." AR 123. Granted, these two quoted statements in succession do give the impression that, based on

6

the decline in FVC and TLC, the pulmonologist gave some credence to Plaintiff's contention that his symptoms were caused by decades of asphalt exposure. But Plaintiff does not explain why pinpointing the cause of the symptoms and abnormalities would inform the ALJ's analysis regarding the functional impact thereof.

Next, Plaintiff's contention that the pulmonologist could not pinpoint the diagnosis until June 2019 presupposes that he pinpointed the diagnosis at all, which it does not appear that he did. Rather, he noted it could represent an early interstitial lung disease but that asthma could not be ruled out. And again, it is not clear why Plaintiff believes that pinpointing the cause of the respiratory symptoms and abnormalities sheds light on their functional impact, or presents an increased likelihood that the ALJ would have credited Plaintiff's testimony about his exertional intolerance had she seen the additional pulmonology records.

The new pulmonology records do not appear to present a reasonable "probability" (to use the language of the regulations, 20 C.F.R. § 404.970), or reasonable "possibility" (to use the language of the Ninth Circuit, *Mayes*, 276 F.3d at 462) that the outcome would have been different had the ALJ considered the evidence. There is an insufficient basis to conclude that the Appeals Council harmfully erred in excluding the evidence.

However, Plaintiff's overarching point is reasonably well taken that these additional records reflect new developments in Plaintiff's pulmonology workup, developments which do not have significant meaning to a layperson. Because the undersigned recommends remanding the matter for the ALJ to consult with an appropriate medical professional to assess the impact of Plaintiff's pulmonary and knee conditions as reflected in the records post-dating the agency physicians' review, it would be incongruous to exclude the additional records Plaintiff submitted to the Appeals Council (AR 64-155).

### B.     Failure to Develop the Record

#### 1.     Applicable Law

The ALJ's duty to further develop the record is triggered where the evidence is ambiguous or inadequate to allow for proper evaluation. *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001); *Tonapetyan*, 242 F.3d at 1150. A specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011); *Garcia v. Comm'r of Soc. Sec.*, No. 1:19-CV-00545-SAB, 2020 WL 1904826, at *13 (E.D. Cal. Apr. 17, 2020).

#### 2.     Analysis

Plaintiff begins with the contention that the ALJ pointed to no evidence from a treating or an examining medical professional to support the RFC assessment, a gap which renders the RFC unsupported. This statement is refuted by the regulations which state that the RFC need not mirror a particular opinion; it is an assessment formulated by the ALJ based on all relevant evidence. *See* 20 C.F.R. §§ 404.1545(a)(3).

Relatedly, Plaintiff argues the ALJ was unqualified to interpret medical data and translate it in functional terms which he contends the ALJ necessarily did by independently reviewing the medical evidence post-dating the non-examining physician's opinions. This argument is also unpersuasive in that there is always a gap in time between prior administrative decisions and the ALJ decision, and claimants routinely continue treatment during that time generating new medical evidence. Defendant responds by quoting various Ninth Circuit case law imposing no limit on the gap in time.

Although ALJs do not have unbridled discretion to do so, an ALJ is almost always tasked

with performing some independent review of medical evidence that was never considered by one of the agency's reviewing physicians and translating the same into an RFC.  This is consistent with the ALJ's role as characterized by the Ninth Circuit.  *See Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015),  ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").  The agency may (not must) order a consultative examination to resolve ambiguity or insufficiency. 20 C.F.R. § 404.1519.

While there are no bright lines circumscribing the ALJ's authority to independently interpret medical evidence, some courts have found that an ALJ errs in independently reviewing medical evidence when it involves: 1) review of raw medical data such as complex imaging findings or laboratory testing results; 2) worsening of underlying impairments; or 3) development of novel impairments.  *See, e.g.*, *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (ALJ formulated claimant's residual functional capacity based on magnetic resonance images without the benefit of any medical opinion about the functional limitations attributable to the impairments depicted in the images); *Goodman v. Berryhill*, No. 2:17-CV-01228 CKD, 2019 WL 79016, at *5 (E.D. Cal. Jan. 2, 2019) (finding that the ALJ erred in adopting state agency consultants' opinions which were rendered before "plaintiff sustained a fall in November 2014" and before "an April 2015 MRI of the lumbar spine [which] showed L1 compression deformity with worsened kyphosis . . ."); *Stevenson v. Colvin*, No. 2:15-CV-0463-CKD, 2015 WL 6502198, at *4 (E.D. Cal. Oct. 27, 2015) (holding that the ALJ erred in adopting the functionality opinion of a non-examining state agency physician, an opinion which pre-dated "plaintiff's treating records regarding the progression of his spinal impairments, which were developed after the date of Dr. Pancho's opinion.").

With respect to his pulmonary condition, Plaintiff contends that it was only after the non-examining physician's review that his pulmonologist began considering what comorbidities might

9

be responsible for his breathing difficulties. Br. at 11 (citing AR 632). The cited record indicates that his pulmonologist suspected his dyspnea was related to his anemia. *Id.* That does not speak to Plaintiff's functionality. Plaintiff further contends the later date records documented worsening of the condition as evidenced by weekly use of a rescue inhaler (AR 631), abnormal diastolic functioning on May 2018 echocardiography (AR 810) and significant oxygen desaturation in June 2018 (AR 844).

Weekly use of a rescue inhaler does not self evidently suggest worsening of his breathing difficulties, particularly considering the record Plaintiff cites describing the inhaler use notes his breathing was improving with the colder weather. AR 631. As to his diastolic abnormality, although it may be true that an ALJ is not particularly well qualified to review and translate echocardiography into functional terms, the echocardiography results do not leave much to be translated given the diastolic abnormality was described as "mild" and the study results were otherwise noted as normal essentially across the board. 810–811.

As for his post-walk oxygen desaturation from 99% to 95%, the record notes "his ambulatory oxygen desaturation is significant (more than 3% is significant)" but this does not suggest worsening of the impairment as Plaintiff cites no other oxygen saturation figures by way of comparison, likely because no such records appear to exist.

Though not an overwhelmingly persuasive argument, generally speaking it does appear that Plaintiff's pulmonary workup began a bit more in earnest following the non-examining physician's review of records concluding August 31, 2017, and the functional impact of the abnormalities noted in those records is perhaps not entirely self-explanatory.

With respect to his knee impairment, Plaintiff also emphasizes records post-dating the agency level review, including: 1) evidence that his cortisone injections were not effective (no citation provided); 2) involvement of the right knee for the first time (citing AR 600); 3)

consistent reports of inability to stand or walk beyond 20 minutes due to knee pain (citing AR 690, 697, 763, 795); 4) May 1, 2019 bilateral knee x-ray showing moderate joint space narrowing and spurring (AR 554).

Plaintiff cites no records supporting the contention that his cortisone injections were ineffective.  Further, the cited records do not consistently document reports of inability to stand or walk beyond 20 minutes.  The first cited record (AR 690) states he is "not able to do cardio due to knee pain," but that he had been going to the gym for 1 hour for weight training.  The second cited record (AR 697) notes he had not been walking "as much" due to knee pain with cold weather, but that he was going to the gym three times a week.  The third cited record (AR 763) does state he stops walking after 20 minutes due to knee pain.  The fourth cited record (AR 794) states he is walking 20 minutes a day when he can, and stops when he gets tired.

On the other hand, the x-rays do document a worsening of his impairment.  The x-ray reviewed by the non-examining physicians dated March 29, 2017 showed left knee patella spurs with no arthritis and mild medial compartment narrowing (AR 356), whereas subsequent x-rays dated May 2019 showed bilateral osteoarthritis with moderate medial compartment narrowing. AR 554.  Thus, in two years time his mild left-sided medial compartment narrowing without arthritis (and without right knee involvement) progressed to moderate bilateral medial compartment narrowing with arthritis.  This was a fairly significant development about which the ALJ arguably should have sought consultative guidance before independently concluding that, notwithstanding the progression of the impairment, Plaintiff could perform medium exertional work without standing or walking limitations and occasional lifting up to 50 pounds.

Although Plaintiff makes a number of unsupportable generalizations about what an ALJ may or may not do as far as independent medical evidence review, there certainly is some limit on what an ALJ may or may not review and interpret independently.  Defendant's analysis begins

and ends with a refutation of Plaintiff's generalizations. Defendant does not acknowledge the existence of any line an ALJ may not cross.

More importantly, Plaintiff's argument went a layer deeper than Defendant's and discussed the specific factual developments post-dating the agency physicians' review, developments which he contends warranted further development of the record. Defendant engages in no comparable factual discussion. Rather, after disputing Plaintiff's views on the controlling law, Defendant posits that "the question is not whether an additional physician reviewed the subsequent evidence, but whether the subsequent evidence regarding Plaintiff's impairments and limitations were still consistent with medical consultants' assessments and findings." Resp. at 6. Defendant then asserts without elaboration that the later dated evidence was indeed consistent with the medical consultants' prior assessments and findings. *Id.* at 6-7. But Defendant offers no factual discussion to substantiate that assertion. Defendant's discussion is non-responsive to Plaintiff's discussion, and the Court has no obligation to raise additional counterarguments on Defendant's behalf where Plaintiff has provided an argument that is not facially deficient.

Accordingly, the undersigned recommends that the Court remand for the ALJ to develop the record and consult with an appropriate medical professional to assess the functional impact of the Plaintiff's cardiac/pulmonary and knee impairments as reflected in the records post-dating the agency physicians' review.

### C. Conflict between VE, DOT, and RFC

#### 1. Applicable Law

Pursuant to SSR 00-4p:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or

> VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

## 2. **Analysis**

The RFC here reflects the following environmental restrictions: 1) no exposure to extreme heat; and 2) no exposure to dust, pollens, chemicals, or other respiratory irritants in concentrations greater than an office or retail environment. AR 24. The VE testified than an individual with such limitations could perform three jobs existing in significant numbers in the national economy: 1) hand packager, 2) kitchen helper, and 3) store laborer.

As Plaintiff observes and Defendant acknowledges, two of the jobs the VE identified at step five (kitchen helper (DOT 318.687-010) and hand packager (DOT 920.587-018)) involve exposure to extreme heat per the DOT, and the RFC here prohibits such exposure. Thus, the ALJ erred in relying on the VE's testimony that an individual with Plaintiff's RFC could perform those two jobs.

Plaintiff further contends that the job of store laborer is prohibited by the RFC because it requires exposure to extreme heat, exposure to dust, and does not take place in an office or retail environment. The job of store laborer does not require exposure to extreme heat. *See* Laborer, Stores, DICOT 922.687-058 ("Extreme Heat: Not Present - Activity or condition does not exist.").

Further, Plaintiff's contention that store laborer involves dust exposure and does not take place in an office or retail environment is imprecise. The RFC does not absolutely prohibit exposure to dust, nor does it require the claimant to work in an office or retail environment.

13

Rather, the RFC prohibits exposure to dust or other respiratory irritants "in concentrations greater than an office or retail environment." AR 23.  Granted, one's confidence in the VE's testimony generally might be undermined at this stage given the oversight with respect to the extreme heat exposure required by two of the jobs identified.  Nevertheless, Plaintiff offers no discussion of the DOT job description of store laborer and why Plaintiff believes the job involves exposure to dust or other respiratory irritants *in greater concentrations* than would exist in an office or retail environment.

Plaintiff identifies no harmful error in the step five analysis.

### D. The Supportability of the RFC and the ALJ's Rejection of Plaintiff's Testimony

#### 1. Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883*. See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making

findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

**2.   Analysis**

Plaintiff underscores his testimony concerning his standing and walking limitations attributable to his knee impairment and shortness of breath, which he contends would preclude medium work had those statements been incorporated into the RFC. Plaintiff further disputes the sufficiency of the ALJ's reasoning for discrediting his testimony, which included 1) that most of his care consisted of maintenance appointments and medication management for diabetes (which Plaintiff contends is irrelevant when assessing the functional impact of his other impairments); 2)

15

his purportedly conservative treatment consisting of narcotics and injections (which Plaintiff contends is not properly considered conservative under prevailing law); and, 3) his admitted activities of daily living including chores, occasional yardwork, and exercise (which Plaintiff contends was a gross mischaracterization of his activity level by the ALJ). Br. at 15–16.

This claim of error appears to be in the alternative to the Plaintiff's second argument discussed above. Plaintiff argued in his second claim of error that the record was incomplete or inadequate because no medical professional had assessed the functional impact of his respiratory and knee impairments as reflected in the records postdating August 31, 2017 (the latest dated record reviewed on reconsideration). Resolving that inadequacy logically precedes a conclusion whether to credit or discredit Plaintiff's testimony concerning the functional impact of those same impairments, and logically precedes the ALJ's formulation of the RFC more generally, which the ALJ formulating based on his own interpretation of those records.

### VI.     Conclusion

For the reasons stated above, the undersigned recommends that the Court find that substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled, that the Clerk of Court be directed to enter judgment in favor of Plaintiff Juan E. Marquez and against Defendant Kilolo Kijakazi, acting Commissioner of Social Security.

On remand, the undersigned recommends that the ALJ be instructed to order a consultative examination and/or to consult with an appropriate medical professional to opine on the functional impact of Plaintiff's pulmonary/cardiac and knee impairments as reflected in the records post-dating the non-examining physicians review (which concluded with a progress noted dated August 31, 2017, AR 169), as well as the additional records Plaintiff submitted to the appeals council (AR 64-155) and to proceed through the sequential process as appropriate. See *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Generally when a court . . . reverses an

administrative determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

### VII. Objections Due within 14 Days

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **May 15, 2023**          **/s/ Gary S. Austin**
                                   UNITED STATES MAGISTRATE JUDGE